

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 6, 2025

**BY ECF & EMAIL**
The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Steven Paulino*, 19 Cr. 54 (PGG)

Dear Judge Gardephe:

      The Government respectfully submits this letter in advance of supervisee Steven Paulino's anticipated admissions to certain violations of supervised release and immediate sentencing, which is scheduled for February 13, 2025, at 10:00 AM. The parties anticipate that Mr. Paulino will admit to Specifications One, Three, Seven, and Ten in the Probation Office's October 31, 2024 Violation Report (the "Violation Report").

      For the reasons set forth below, the Government respectfully submits that a sentence of 14 months' imprisonment, followed by a three-year term of supervised release, would be sufficient but not greater than necessary to serve the purposes of sentencing.

**I.**      **Underlying Offense Conduct**

      On November 1, 2018, Mr. Paulino and two other individuals entered and robbed a store located in the Bronx. (PSR ¶ 14.) In the course of that robbery, Mr. Paulino brandished a silver firearm and pushed the store manager ("Victim-1") against the wall. (PSR ¶ 16.) One of Mr. Paulino's co-conspirators also brandished a separate firearm. (*Id.*) After removing bags containing cellphones from the store, Mr. Paulino sprayed what appeared to be mace on Victim-1. (PSR ¶¶ 17–18.) The financial loss of the robbery was approximately $20,071, and Victim-1 sustained bodily injury as well. (PSR ¶ 25.) Mr. Paulino was not arrested in the immediate aftermath of the robbery.

      On November 4, 2018, New York City Police Department ("NYPD") officers responded to a report of a male with a firearm in a dispute. (PSR ¶ 10.) Police officers approached an individual who matched the description of the male with a firearm, later identified as Mr. Paulino, who fled with an object in his hand. (*Id.*) During the pursuit of Mr. Paulino, a sound consistent with a single gunshot was heard. (*Id.*) Mr. Paulino attempted to jump from the roof of one building to the fire escape of another building, but fell approximately three stories to the ground. (PSR ¶ 11.) He was then arrested and taken to the hospital for treatment. (*Id.*)

At the time of Mr. Paulino's arrest on November 4, 2018, he was wearing the same clothing as shown in the surveillance footage of the November 1, 2018 robbery. (PSR ¶¶ 12, 14.) In addition, officers discovered a container of mace and two cellphones on Mr. Paulino's person, as well as a loaded .380 caliber silver and black firearm approximately 20 feet from where Mr. Paulino landed on the ground. (PSR ¶ 13.)

On July 19, 2019, Mr. Paulino was charged by superseding information with one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2; and one count of Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2. (PSR ¶¶ 1–3.) On or about July 19, 2019, Mr. Paulino pled guilty to both counts, pursuant to a plea agreement. (PSR ¶ 5.) On December 2, 2020, Mr. Paulino was sentenced to three years' imprisonment followed by three years of supervised release. Mr. Paulino commenced his term of supervised release on August 10, 2022.

## II. Prior Adjustment to Supervision

Mr. Paulino has had a history of difficulty adjusting to supervision and failing to complete drug treatment. (PSR ¶ 7 (indicating that, while on pretrial supervision, Mr. Paulino "had several instances of noncompliance," including being "initially noncompliant with treatment" and later referred to Tri-Center "after failing to attend a non-contract program and continuing to test positive for opiates without a prescription").) In August 2019, while subject to pretrial supervision and other conditions of release, Mr. Paulino went to the home of an intimate partner (the "Partner"), was aggressive and belligerent, and removed property. (PSR ¶ 64.) He also harassed the Partner, as well as her family, friends, and colleagues, both by phone and in person. (*Id.*) On a later occasion in or about August 2019, Mr. Paulino, in violation of a curfew then in effect, went to the Partner's home, tried to take their child out of the stroller, and said, "I'm taking my [expletive] baby," "You lucky I don't kidnap the baby. I can kidnap her, keep playing." (PSR ¶ 63.)

Pretrial Services filed a violation memo on September 3, 2019, and this Court held a conference on September 9, 2019, due to "a pattern of problems with the defendant's compliance with . . . home monitoring requirements" and the Partner's application for an order of protection against Mr. Paulino. (Dkt. 36 ("9/9/2019 Tr.") at 2:16–21.) At that time, Mr. Paulino did not have any prior history of orders of protection, and defense counsel argued that this was not a pattern, there was no claim that Mr. Paulino had a weapon or was threatening violence, and there had been no violation of an order of protection, and that essentially, Mr. Paulino's aberrant conduct resulted from an acute crisis. (*See, e.g.*, 9/9/2019 Tr. at 10–13.) Mr. Paulino was then remanded pending sentencing on the underlying Hobbs Act charges. (9/9/2019 Tr. at 15:8–12.)

After serving his sentence, Mr. Paulino commenced supervised release on August 10, 2022.

On March 15, 2023, this Court held an initial hearing in connection with Mr. Paulino's violations of supervised release alleged in a 2023 violation report (the "2023 Violation Report"), including "by using marijuana, oxycodone, amphetamines, and oxymorphone; by failing to attend substance abuse treatment sessions; by failing to report to the probation officer as directed; by failing to submit a financial statement; by failing to make a good-faith effort to pay the $20,071.08 of the court-ordered restitution; and by failing to report for scheduled drug testing at the probation

office." (Dkt. 75 ("3/15/2023 Tr.") at 2:12–20.) At that time, Mr. Paulino's terms of supervised release were modified to include a requirement that he participate in a 90-day in-patient drug treatment program. (*Id.* at 9:19–22.)

Following the successful completion of the 90-day in-patient program, the 2023 Violation Report was resolved by Mr. Paulino's admission to Specification Five, which stated, "On or about October 28, 2022, November 17, 2022, November 18, 2022, November 25, 2022, December 1, 2022, December 2, 2022, December 23, 2022 and December 30, 2022, you failed to participate in co-occurring treatment and that you failed to report for scheduled individual group sessions." (Dkt. 79 ("6/28/2023 Tr.") at 6:21–25.) At that time, Probation reported that Mr. Paulino "has a very positive progress." (*Id.* at 3:18–19.) Both counsel for Mr. Paulino and the Government argued that the appropriate disposition was to reimpose the prior conditions of supervised release without any term of imprisonment, in light of Mr. Paulino's successful drug treatment. (*Id.* at 8:8–9:9.) The Court agreed, noting that "the record here demonstrates that Mr. Paulino's problems are all associated with his use of drugs," and therefore, his successful completion of the 90-day program was "extremely important" to the Court's analysis. (*Id.* at 9:20–10:6.)

According to a February 26, 2024 Report by Probation, on November 14, 2023, December 25, 2023, and January 10, 2024, Mr. Paulino had positive marijuana tests. (2/26/2024 Report.) The same report alleged that, on January 21, 2024, Mr. Paulino was arrested for driving with a suspended license. (*Id.*) To address these issues, Probation referred Mr. Paulino to Cornerstone Facility for in-patient treatment on January 30, 2024. (*Id.*) As of February 16, 2024, Mr. Paulino was reportedly doing well in that treatment program (although, as described below, he was discharged from that program the following month after he failed to abide by its regulations). (*Id.*) These allegations did not result in any admissions by Mr. Paulino.

According to a May 22, 2024 Report by Probation, on March 15, 2024, the Partner reported to NYPD officers that the Partner saw Mr. Paulino with a firearm; however, no firearm was recovered at that time, and because the NYPD could not contact the Partner, those charges were deferred. (5/22/2024 Report.) This allegation did not result in any admission by Mr. Paulino.

### III. Current Violation of Supervised Release

Mr. Paulino then went on to commit several additional violations of his supervised release, which are reflected in the 10 specifications alleged in the instant Violation Report. The parties anticipate that Mr. Paulino will admit to Specifications One, Three, Seven, and Ten at the next scheduled conference on February 13, 2025. In addition, the Government understands from Mr. Paulino's counsel that he does not dispute the facts underlying Specifications Six and Nine as reported in the Violation Report.

- Specification One: On or about October 7, 2024, in Bronx County, New York, the supervisee committed a federal crime, to wit, felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1), a Class C Felony, in that having previously been convicted of a crime punishable by a year or more, he was in possession of a loaded 380 Ruger LCP firearm, bearing serial no. 371433484.

- Specification Two:  On or about October 7, 2024, in Bronx County, New York, the supervisee violated supervised release, in that, he possessed a firearm, in violation of New York State Penal Law 265.03, a Class C Felony, in that he possessed a loaded 380 Ruger LCP firearm, bearing serial no. 371433484.

- Specification Three:  On or about October 7, 2024, in Bronx County, New York, the supervisee committed a federal crime, unlawful possession or receipt of ammunition after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1), a Class C Felony, in that he possessed ammunition.

- Specification Four:  On or about October 7, 2024, the supervisee possessed a firearm, to wit, a loaded 380 Ruger LCP firearm, bearing serial no. 371433484.

- Specification Five:  On or before October 7, 2024, the supervisee possessed a controlled substance, to wit, three mason jars and two plastic tubes of marijuana.

- Specification Six:  On or about October 7, 2024, in Bronx County, New York, the supervisee committed a state crime, to wit, criminally using drug paraphernalia in the second degree, in violation of New York State Penal Law 220.50, a Class A Misdemeanor, in that he possessed a scale, drug packaging, and small capsules in his bedroom.

- Specification Seven:  On or about March 25, 2024, until May 28, 2024, the supervisee failed to participate in mental health treatment/substance abuse treatment, in that he was unsuccessfully discharged from Tri-Center due to lack of attendance.

- Specification Eight:  On or before June 6, 2024, the supervisee used a controlled substance, to wit, marijuana.

- Specification Nine:  On or about August 14, 2024, the supervisee failed to participate in inpatient mental health/substance abuse treatment, in that he was unsuccessfully discharged from the residential treatment at Samaritan Daytop Village after he admitted to using K-2 (synthetic cannabinoids).

- Specification Ten:  On or before June 3, 2024, the supervisee left the judicial district without the permission of the Court or the Probation Officer[,] to wit, he traveled to Saint Martin.

The conduct underlying these specifications is as follows.  On March 25, 2024, Mr. Paulino was referred to Tri-Center for intensive out-patient drug treatment, after having been discharged from Cornerstone Facility for failure to abide by program regulations.  (Violation Report at 3, 5–6.)  Mr. Paulino then failed to appear on 11 occasions in May for his treatment at the Tri-Center program and was discharged on May 28, 2024, for noncompliance.  (*Id.*)  This conduct forms the basis for Specification Seven, to which Mr. Paulino is expected to admit.

The following week, on June 3, 2024, U.S. Customs and Border Protection notified Probation that Mr. Paulino traveled internationally to St. Martin.  Mr. Paulino did so without the knowledge or permission of Probation, and in direct violation of his conditions of supervised

release, which prohibit international travel without the advance consent of his Probation Officer and approval of the Court. (Violation Report at 4, 6.) Some of Mr. Paulino's 11 absences at Tri-Center were due to taking this trip. (*Id.* at 4.) This conduct forms the basis for Specification Ten, to which Mr. Paulino is expected to admit.

After he returned from St. Martin, on June 24, 2024, Mr. Paulino was referred to residential treatment at Samaritan Daytop Village, but he was discharged on or about August 14, 2024, for substance use (K-2) and theft (stealing a staff member's phone). (Violation Report at 4, 6.) This conduct forms the basis for Specification Nine, to which Mr. Paulino is not expected to admit, but the underlying facts of which he does not dispute.

On August 16, 2024, a few months after the Partner reported to NYPD officers that the Partner saw Mr. Paulino with a firearm, the Partner reported to the NYPD that Mr. Paulino threatened her over the phone, stating, "I'm going to shoot you and your baby daddy." (10/7/2024 Petition for Warrant.) Probation conducted a search of Mr. Paulino's residence on October 7, 2024. (10/7/2024 Petition for Warrant.) That search resulted in the seizure of a loaded firearm, a loaded magazine, several loose rounds of ammunition, and drug paraphernalia, including a scale, drug packaging, and small capsules. (*Id.*) This conduct forms the basis for Specifications One, Three, and Six. (Violation Report at 4–5.) Mr. Paulino is expected to admit to Specifications One and Three, and does not dispute the underlying facts of Specification Six.

At the time of Probation's search, on October 7, 2024, Mr. Paulino was unable to be located, and he was not responsive to Probation's attempts to contact him. (10/7/2024 Petition for Warrant.) On October 7, 2024, Probation petitioned the Court for a warrant for Mr. Paulino's arrest, which the Court issued. Mr. Paulino was arrested on October 28, 2024, and Probation issued the Violation Report on October 31, 2024.

Mr. Paulino has been detained since his arrest on October 28, 2024, and, according to Bureau of Prisons records, three incidents have occurred from October 29, 2024, to November 18, 2024, each of which resulted in sanctions, including by losing access to certain privileges.

## IV. APPLICABLE LAW

Upon finding that the supervisee has violated a condition of supervised release, the Court may revoke supervised release and require the supervisee to serve a period of incarceration. *See* 18 U.S.C. § 3583(e). When imposing a sentence for a violation of supervised release, the Court must consider the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant, and the applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range. *See* 18 U.S.C. §§ 3553(a); 3583(e).

In assessing the appropriate sentence for violating conditions of supervised release, "the primary goal of a revocation sentence" is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b).

Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *Id.*; *see also United States v. Peguero*, 34 F.4th 143, 161 (2d Cir. 2022); *United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007).

Because Specifications One and Three are Grade B violations, and the supervisee is in Criminal History Category IV,[1] the Guidelines range is 12 to 18 months' imprisonment. *See* U.S.S.G. § 7B1.4(a). Because the supervisee was originally convicted of a Class C Felony, the maximum term of imprisonment that can be imposed is two years. *See* 18 U.S.C. § 3583(e)(3). The maximum term of supervised release that can be imposed following any term of imprisonment is three years less any term of imprisonment imposed for the instant violation. *See* 18 U.S.C. § 3583(h).

Because Specifications Seven and Ten are Grade C violations, and the supervisee is in Criminal History Category IV, the Guidelines range is six to 12 months' imprisonment. *See* U.S.S.G. § 7B1.4(a). Because the supervisee was originally convicted of a Class C Felony, the maximum term of imprisonment that can be imposed is two years. *See* 18 U.S.C. § 3583(e)(3). The maximum term of supervised release that can be imposed following any term of imprisonment is three years less any term of imprisonment imposed for the instant violation. *See* 18 U.S.C. § 3583(h).

Pursuant to 18 U.S.C. § 3583(g), if the supervisee is found to have possessed a controlled substance or firearm, the Court shall revoke the term of supervised release and require the supervisee to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3). The Court may supersede that provision and "shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test." 18 U.S.C. § 3583(d).

## V.     DISCUSSION

Probation recommends that supervised release be revoked, and that Mr. Paulino be sentenced to 12 months of imprisonment, notwithstanding the Court's consideration of the availability of appropriate substance abuse treatment programs. As Probation states in the Violation Report, "Despite Your Honor's leniency of a three-year sentence and multiple

---

[1] At the time of sentencing on the underlying criminal case, Mr. Paulino was in Criminal History Category IV. (PSR ¶ 60.) The Violation Report notes that applying Amendment 821 to the United States Sentencing Guidelines would put Mr. Paulino in Criminal History Category III today. In that scenario, the Guidelines range for a Grade B violation would be eight to 14 months, and for a Grade C violation would be five to 11 months. Probation's recommendation for "a sentence at the high end of the guidelines" is based on Criminal History Category III rather than IV. It is the Government's understanding that Probation has recommended 12 months rather than 14 months, because if Mr. Paulino receives good conduct time during his term of imprisonment, a sentence of 14 months would result in Mr. Paulino serving slightly less than 12 months.

coordinated efforts made by the probation office, it is without question that Paulino has no intention or desire to comply with his court ordered conditions, cooperate with the probation office or follow guidance of his attorney." (Violation Report at 8.)

The Government agrees with Probation that a sentence "at the high end of the guidelines is appropriate." (*Id.*) The Government has two primary concerns with Mr. Paulino. First, Mr. Paulino has continuously frustrated Probation's and the Court's repeated attempts to help him get drug treatment, in that he has consistently failed to follow through on multiple programs, whether it is for failure to attend, as with Tri-Center in May last year, or if it is for substance use and theft, as with Samaritan Daytop Village in August last year. In other words, Mr. Paulino has repeatedly demonstrated that he is not committed to attending drug treatment and, instead, has decided to pursue serious criminal conduct. Over the course of approximately eight months, among other things, he illegally possessed a loaded firearm and ammunition, reportedly made threats involving a firearm, and possessed drug paraphernalia that is used to package and sell narcotics. For that reason, the defense that Mr. Paulino's conduct stems from addiction is unavailing, because (1) he has not demonstrated a serious commitment to ending that addiction, and (2) the issues presented here go well beyond mere relapse and into serious criminal conduct.

Second, to date, Mr. Paulino has not expressed any remorse about betraying the trust of the Court or of Probation, despite multiple efforts and expenditure of significant resources on Mr. Paulino. For example, traveling to St. Martin on vacation with his girlfriend without notification to Probation, and skipping his mandated drug treatment to do so, is a knowing and intentional breach of trust that Mr. Paulino appears to have engaged in quite cavalierly. The Violation Report also reflects placing Mr. Paulino in three separate drug treatment programs, all of which resulted in unsuccessful discharge due to Mr. Paulino's conduct.

At the time that Mr. Paulino was sentenced for his underlying offense, defense counsel argued that Mr. Paulino was high when he committed the underlying offense, that he was high when he fled from police and attempted to jump from a building to a fire escape, and that noncompliance with his conditions of release came from upheaval in the relationship with his girlfriend at the time. With respect to the current Violation Report, Mr. Paulino again seeks leniency from the Court on the basis that his conduct was due to drug use as a response to upheaval in his life, in this case, the loss of employment. The Government is sympathetic that loss of employment may cause upheaval; however, it simply cannot be that engaging in criminal conduct is an acceptable response. Unlike at the time of Mr. Paulino's initial sentencing, there now does exist a pattern of threats, a history of orders of protection, and access to weapons. Mr. Paulino has demonstrated repeatedly to the Court that its original reasons for leniency no longer exist.

## VI. CONCLUSION

For all of the reasons stated above, the Government recommends a sentence of 14 months' imprisonment and three years' supervised release.

Respectfully submitted,

DANIELLE R. SASSOON
United States Attorney for the
Southern District of New York

by: _____
Angela Zhu
Assistant United States Attorney
(212) 637-1027

CC:  Tamara Giwa (by ECF)
U.S. Probation Officer Kyro King (by email)